UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



PALAXAR GROUP, LLC, *et al.*,

and

PALAXAR HOLDINGS, LLC,

                Plaintiffs,

v.

SHANE WILLIAMS, *et al.*,

                Defendants.

Civil Action No. 3:13-CV-641

## MEMORANDUM OPINION

THIS MATTER is before the Court on twelve (12) Motions filed by various Defendants seeking transfer to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) or, in the alternative, dismissal for lack of personal jurisdiction and/or improper venue (ECF Nos. 25, 29, 41, 44, 47, 49, 50, 55, 59, 60, 66, 68). For the reasons that follow, the Court will TRANSFER this action to the Middle District of Florida.

### I. BACKGROUND[1]

#### A. FACTUAL BACKGROUND

Palaxar Group, LLC, and Palaxar Holdings, LLC (collectively, "Palaxar"), are limited liability corporations that were formed in 2006 under the laws of Virginia by Edith Curry ("Curry") and others. Palaxar is an anti-fraud investigation and consulting organization with its principal place of business in Henrico, Virginia. Beginning in 2006, Palaxar was involved in contract negotiations with the United States Government and pursued teaming agreements with

---

[1] This factual background includes only portions of the allegations in the 72-page Complaint. For the purposes of this Motion, the Court assumes all of Plaintiffs' well-pleaded allegations to be true, and views all facts in the light most favorable to Plaintiffs. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see* Fed. R. Civ. P. 12(b)(6).

large data aggregators in an effort to license its proprietary anti-fraud methodologies. Also during 2006, Curry apparently was employed by Frank Amodeo ("Amodeo") as President of Defendant Nexia Strategy Corporation ("Nexia") and acted as a member of the Board of Directors for Mirabilis Ventures, Incorporated ("MVI"). Nexia was a wholly owned subsidiary of MVI before both companies were forfeited by Amodeo to the Government in 2008. Defendant Aqmi Strategy Corporation ("AQMI") was the secured creditor of both Nexia and MVI and was similarly forfeited to the Government.

While employed by Nexia, Curry and three other inventors developed certain methods for fraud detection ("Palaxar Processes") and sought to patent these methods. Palaxar asserts that patents claiming the Palaxar Processes were eventually issued and that it owns the exclusive rights to the Palaxar Processes. On August 1, 2006, Curry and the other inventors assigned a world-wide, royalty free, non-exclusive license for the Palaxar Processes to MVI and Nexia in exchange for a waiver of all right, title, and interest in the Palaxar Processes. Palaxar asserts that these terms were memorialized in writing ("Assignment Agreements") and provided for payment of the prevailing party's attorneys' fees if an action was commenced to enforce the Assignment Agreements. The Assignment Agreements were drafted by Defendant Goldberg, who was in-house counsel at the time for AQMI, MVI, and Nexia.

On October 16, 2006, Curry entered into a confidential separation agreement with MVI ("Separation Agreement") terminating her employment with Nexia and presumably her association with MVI. The Separation Agreement stated, "All rights, title and interest in [the Palaxar Processes] will be assigned to [Curry]. [Curry] shall be indemnified by MVI, from and against any claims that may be brought against [Curry] as a result of [her] serving as an officer and director of [MVI and Nexia]." Additionally, Curry's employment agreement with Nexia, as well as MVI's and Nexia's by-laws, each contained indemnification provisions.

Prior to 2007 and pursuant to an agreement, Palaxar and Nexia were engaged in jointly marketing their services. In February 2007, Palaxar and Nexia were in the final stages of

formalizing an agreement to license the Palaxar Processes to Wachovia Securities, for which Palaxar reasonably expected to secure a $2,000,000 share. Additionally, from as early as 2006, Palaxar was engaged in contract negotiations for use of the Palaxar Processes by the United States Government. As of October 1, 2007, Palaxar was in top tier negotiations for the Government's use of the Palaxar Processes. These negotiations had involved proposals, demonstrations, and pilot programs, and Palaxar was finalizing negotiations and reasonably expected to secure a contract with its share being $47,000,000. Palaxar also asserts that it was in negotiations with the Commonwealth of Virginia for use of the Palaxar Processes, but no dates or details of these negotiations are furnished by the Complaint.

In December 2006, the federal government began investigating Amodeo over allegations of tax fraud. During 2005 and 2006, Amodeo had diverted more than $100,000,000 in payroll taxes from a number of payroll processing companies, which Amodeo owned or controlled. Amodeo used these funds, in part, to capitalize MVI, AQMI, and Nexia. By March 2007, as a result of the prosecution of Amodeo, MVI and Nexia were in the process of liquidating and had terminated all employees except Defendants Jaiman, Stollenwerk, Williams, Bates, Mokwa, and Goldberg. Jaiman, Stollenwerk, and Williams were corporate officers of the Defendant Corporations; Bates, Mokwa, and Goldberg were attorneys representing Amodeo and/or the Defendant Corporations. Beginning in 2006, Amodeo was additionally represented by Defendant Slaughter in relation to his prosecution.

Curry cooperated with the Government in its investigation of Amodeo and his companies. On February 9, 2007, Slaughter began negotiating a plea agreement on behalf of Amodeo. Amodeo ultimately pled guilty to tax fraud, was sentenced to 22 years' imprisonment. Seven of Amodeo's companies, including the Defendant Corporations, were forfeited to the Government as a condition of Amodeo's plea agreement.

On October 12, 2007, Nexia and MVI filed suit against Curry, Palaxar, and several other individuals associated with Palaxar ("Florida Lawsuit"). Palaxar alleges that the Florida Lawsuit

was initiated as part of a larger conspiracy to obtain funds for Amodeo that could be forfeited to the Government as restitution in exchange for a more lenient criminal sentence.[2] Plaintiffs in the Florida Lawsuit sought damages for conversion, misappropriation, self-dealing, breach of fiduciary duty, breach of employment contracts, conspiracy to convert assets, breach of contract, and unjust enrichment, as well as an injunction prohibiting use of the Palaxar Processes. The procedural history of the Florida Lawsuit is thoroughly summarized in *Mirabilis Ventures, Inc. v. Palaxar Grp.*, No. 6:07-cv-1788, 2011 U.S. Dist. LEXIS 104629 (M.D. Fla. Aug. 18, 2011), *adopted by* 2011 U.S. Dist. LEXIS 104624 (M.D. Fla. Sept. 15, 2011), in which a Florida Magistrate Judge recommended denying Curry and others an award of attorneys' fees.

Palaxar alleges that the Florida Lawsuit and related actions taken by Defendants[3] were maliciously prosecuted and were overt acts in furtherance of the conspiracy described above. Palaxar asserts that Slaughter, Goldberg, Jaiman, Williams, Stollenwerk, O'Malley, and the attorneys who prosecuted the Florida Litigation (The Maher Law Firm, PA, Maher, Bates, Mokwa, Estes, Balch & Bingham, LLP, Campbell, Langley, and Reese) each had actual knowledge of Palaxar's business expectancies described above. Palaxar argues that their actual knowledge of these business expectancies is confirmed by the complaint in the Florida Lawsuit,

---

[2] This conspiracy is alleged to have targeted 112 companies and their Directors and Officers for litigation in the hope of recovering $420,000,000, of which $180,000,000 would be repaid to the IRS as restitution on behalf of Amodeo and the remainder would be used to pay Amodeo's attorneys' fees and other interested parties. Palaxar alleges that Jaiman, Stollenwerk, and Williams were to obtain 5% of any funds recovered for their work as "trial consultants," and that the Defendant attorneys and law firms were to receive 55% of any funds recovered through conspiracy-related litigation. Palaxar alleges that during the conspiracy, Defendant attorneys and law firms diverted recovered funds from their client trust accounts to the firms' operating accounts in an effort to prevent the Government from seizing these recovered funds. This practice ultimately cause the Government to seize improperly diverted funds from Jaiman, Stollenwerk, Williams, Maher, and Defendant Law Firms Balch & Bingham, LLP, Latham, Shuker, Eden, & Beaudine, LLP, and Broad and Cassel, PA. Attempts to retrieve funds from Bates, Mokwa, and Goldberg were unsuccessful.

[3] Specifically, Palaxar points to a related bankruptcy proceeding and a series of press releases and publications made by Defendant O'Malley at the direction of various other Defendants. Palaxar alleges that various Defendants' initiation of bankruptcy proceedings on behalf of MVI was an overt act in furtherance of the conspiracy because it was improperly instituted for the purpose of perpetuating the Florida Litigation. Defendants Cuthill, Green, Shuker, and Law Firm Latham, Shuker, Eden, and Beaudine, LLP, were involved in MVI's bankruptcy in the Middle District of Florida. Palaxar further alleges that the O'Malley's press releases were knowingly false, were made with actual or constructive knowledge that Palaxar's business expectancies would be harmed, and constituted overt acts in furtherance of the conspiracy.

which alleged that Curry and Palaxar misappropriated the Palaxar Processes for the purpose of obtaining the above-described business expectancies. Palaxar additionally argues that the Florida Lawsuit was initiated and perpetuated despite actual knowledge of the Assignment Agreements and Curry's Separation Agreement, which assigned the Palaxar Processes to Curry and indemnified her. Palaxar alleges that by November 21, 2007, a number of Defendants had actual knowledge of the Assignment Agreements and Separation Agreement, including Slaughter, Bates, Mokwa, Goldberg, Estes, Campbell, Langley, Reese, Jaiman, Williams, Stollenwerk, and Balch & Bingham, LLP. Despite this actual knowledge, the Florida Lawsuit was pursued for approximately four years.[4]

B. PROCEDURAL BACKGROUND

On September 18, 2013, Palaxar filed suit against the twenty-five defendants, including the Defendant Corporations (Nexia and AQMI), former counsel of Amodeo and/or the Defendant Corporations (Goldberg, Slaughter, Maher, The Maher Law Firm, PA, Mokwa, Bates, Balch & Bingham, LLP, Estes, Campbell, Langley, Reese, Lathan, Shuker, Eden, & Beaudine, LLP, Shuker, Green, Broad and Cassel, P.A., Kobert, Norman, and Vilmos), former executive officers of Defendant Corporations (Cuthill, Williams, Stollenwerk, and Jaiman), and publicist O'Malley. Count One of the Complaint alleges tortious interference. Count Two of the Complaint alleges malicious prosecution. Count Three of the Complaint alleges common law conspiracy. Count Four of the Complaint alleges statutory business conspiracy pursuant to Virginia Code §§ 18.2-499 *et seq.*

Palaxar alleges that the filing of the Florida Lawsuit caused Wachovia, the United States Government, and the Commonwealth of Virginia to cease negotiations for use of the Palaxar Processes. Palaxar asserts that the Florida Lawsuit, and the knowingly false press releases published by O'Malley at the direction of various other Defendants, placed a cloud on the title to

---

[4] In November 2009, Broad & Cassel, P.A. was substituted for Balch & Bingham, LLP, as counsel for MVI (but not Nexia). Palaxar alleges that Broad & Cassel, P.A., Kobert, Norman, and Vilmos participated in the conspiracy prior to November 2009 by accepting laundered funds from other co-conspirators and facilitating Cuthill's improper appointment as MVI's Liquidating President during its bankruptcy proceedings.

the Palaxar Processes, rendering them unmarketable during the four-year pendency of the Florida Lawsuit. Palaxar alleges that Defendants knew or should have known that the Florida Lawsuit would interfere with Palaxar's business expectancies and that the Florida Lawsuit was frivolous in light of the Assignment Agreements and Separation Agreement. Finally, Palaxar alleges that institution and perpetuation of the Florida Lawsuit constitute overt acts in furtherance of Defendants' conspiracy to recover funds for the benefit of Amodeo while improperly diverting a portion of those funds for personal gain.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The decision whether to transfer an action under the statute is committed to the sound discretion of the district court." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010) (citing *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004)). District courts determining whether to grant a motion to transfer under § 1404(a) to a transferee forum where the action could initially have been brought "typically consider[]: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Id.* (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)). "The movant bears the burden of showing that transfer is proper." *JTH Tax*, 482 F. Supp. 3d at 736 (citing *Cognitronics Imaging Sys. v. Recognition Research, Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000)).

## III. DISCUSSION

Although Palaxar's choice of forum is entitled to some deference, transfer would be in the interest of justice and significantly more convenient for the parties and witnesses. As such, the Court will transfer this case to the Middle District of Florida.

//

A. TRANSFEREE FORUM AS INITIAL FORUM

Section 1404(a) allows transfer to any district or division where the action "might have been brought." 28 U.S.C. § 1404(a). Transfer, therefore, may be appropriate only to those districts where the plaintiff could have properly filed the action initially. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). To meet this requirement, the party seeking transfer must show that subject matter jurisdiction, personal jurisdiction, and venue would have been proper in the transferee court. *Id*; *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003) (citing *L.G. Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 812 (E.D. Va. 2001)).

The record indicates, and Palaxar does not appear to dispute, that this action could initially have been brought in the Middle District of Florida.[5] First, whether before this Court or a district court in Florida, there appears to be complete diversity among the parties: Palaxar appears to be a citizen of Virginia, and Defendants appear to be citizens of Florida or Alabama, but not Virginia. Additionally, Palaxar seeks damages well in excess of the jurisdictional limitation, and as such, it appears that a court in the Middle District of Florida would have subject matter jurisdiction on the basis of diversity of the parties. *See* 28 U.S.C. § 1332(a). Second, each of the parties either admits to being a citizen of Florida or participating in the Florida Lawsuit, demonstrating that courts in the Middle District of Florida have personal jurisdiction over Defendants. Third, because a substantial part of the events giving rise to this litigation—namely, the Florida Lawsuit—occurred in the Middle District of Florida, venue is appropriate in the transferee forum. *See* 28 U.S.C. § 1391(b).

Accordingly, this action could initially have been brought in the Middle District of Florida.

//

//

---

[5] Nothing in this section should be construed as speaking to the merits of Defendants' motions to dismiss for lack of subject matter jurisdiction.

7

B. PLAINTIFF'S CHOICE OF FORUM

The plaintiff's choice of forum is generally entitled to substantial weight, "which may be overcome only when the private and public interest factors clearly point toward trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). However, the actual weight given to a plaintiff's choice varies considerably "in proportion to the connection between the forum and the cause of action." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999). The weight given to the plaintiff's initial choice is diminished when the operative facts of the case have little relation to the chosen forum. *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473 (E.D. Va. 2007); *see also GTE Wireless*, 71 F. Supp. 2d at 519 ("When a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.") (citing *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 589 (E.D. Va. 1992)).

Palaxar chose to bring this lawsuit in its home forum. Each Plaintiff is a limited liability corporation organized under the laws of Virginia with its principal place of business in Henrico, Virginia. Palaxar alleges that is has operated in Virginia since 2006 as an anti-fraud investigation and consulting firm offering the Palaxar Processes for licensed use by various government and private entities. Further, Palaxar alleges that because its principle place of business is in Henrico, Virginia, the injury allegedly caused by Defendants occurred in this district.

While Palaxar has established a connection to this forum, the cause of action Palaxar brings has only a limited relation to this forum. Palaxar alleges two underlying torts in this action: tortious interference with a business expectancy and malicious prosecution.[6] To establish a claim for tortious interference, Palaxar must show: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part

---

[6] Palaxar additionally alleges common law conspiracy and Virginia statutory business conspiracy based on these underlying torts. However, the Complaint does not indicate that the conspiracy was formed or entered into by any party in this district.

of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship of expectancy has been disrupted.[7] *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 318 (Va. 2014). To establish a claim for malicious prosecution, Palaxar must show: "(1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding." *Alamo Rent-A-Car v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994) (citations omitted). For each of these alleged torts, the only connection to this district is the final element: injury to Palaxar. By contrast, every other element of the alleged torts occurred in, or was initiated from, the Middle District of Florida. This is so because the crux of Palaxar's claims is that it was injured by the Florida Lawsuit.

Because the Middle District of Florida has a much stronger relation to the claims than this district, the weight given to Palaxar's initial choice of forum is somewhat diminished. Nevertheless, Palaxar has filed this suit in its home forum, and there is some connection

---

[7] Although the Parties dispute the applicable law, it appears likely that Virginia law applies to the tortious interference and conspiracy claims, and Florida law applies to the malicious prosecution claim. Under Virginia's choice of law rules, the doctrine of *lex loci delecti* applies, and claims are analyzed under the law governing the place of the alleged wrong. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir 2009) (citing *Jones v. R.S. Jones & Assocs.*, 431 S.E.2d 33, 34 (Va. 1993). The place of the alleged wrong is where the last act necessary to make the defendant liable occurred. *See Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir 1986); *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006). The last element of a tortious interference claim is damage to the plaintiff; without damages, a defendant may not be held liable. Palaxar has alleged that its business expectancies were being negotiated from Virginia at the time of Defendants' interference and at the time of those expectancies' resulting termination. Defendants have offered no facts (or even argument) to indicate that Palaxar's business expectancies were terminated in Florida. Accordingly, the place of the alleged wrong and the state whose law applies to the tortious interference claim, likely is Virginia. *See Gen. Assur. Of Am., Inc. v. Overby-Seawell*, 533 F. App'x 200, 203 (4th Cir. 2013). In contrast, a claim for malicious prosecution requires a court disposition as well as damages. Arguably, Palaxar was injured prior to disposition of the Florida Lawsuit, making the location of the last act necessary to make Defendants liable Florida—where the favorable disposition was rendered—rather than Virginia.

between this district and the claims alleged. Accordingly, Palaxar's initial choice of forum is entitled to some, but not substantial, deference.

### C. CONVENIENCE OF THE PARTIES

In assessing this factor, courts generally consider "ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005). Convenience to parties alone will rarely justify transfer, particularly where transfer would merely "'shift the balance of inconvenience' from defendant to plaintiff." *Baylor*, 702 F. Supp. at 1258 (quoting *Eastern Scientific Marketing v. Tekna-Seal Corp.*, 696 F. Supp. 173, 180 (E.D. Va. 1988)). However, "it is the 'balance' of convenience which is in question," and courts must determine whether the total convenience of the parties favors transfer. *Medicenters of Am., Inc. v. T & V Realty & Equip. Corp.*, 371 F. Supp. 1180, 1184 (E.D. Va. 1974) (citing *Nizin v. Bright*, 342 F. Supp. 489 (S.D.N.Y. 1971)).

While Palaxar argues that transfer would merely shift inconvenience to it from Defendants, it overlooks the fact that eighteen Defendants are citizens of Florida, and each Defendant that has appeared in this action has indicated that the Middle District of Florida would be a more convenient forum. Transfer will virtually always shift some inconvenience from the defendant to the plaintiff, whose initial choice of forum will presumably be convenient to it. But the balance of the inconvenience will not be shifted to Palaxar where the aggregate convenience to the defendants so heavily favors transfer.

Although convenience to the Parties weighs heavily in favor of transfer, the availability of access to sources of proof and the availability of compulsory process do not appear to be a significant factor in the transfer analysis. While a large number of relevant documents related to the Florida Lawsuit are located in the transferee forum, Palaxar has alleged that documents associated with the Palaxar Processes, its patents, and its alleged damages are located in this district. Similarly, with regard to compulsory process, the Parties assert that a significant

number of witnesses reside in both this district and the transferee forum. Because no Party has demonstrated that significantly more witnesses reside in either district, the Court cannot conclude that the availability of compulsory process or the cost associated with transporting witnesses to either forum weighs in favor of either granting or denying the motions to transfer.

D. WITNESS CONVENIENCE

Witness convenience is of "considerable importance" in determining whether a transfer pursuant to section 1404(a) is appropriate. *Samsung*, 386 F. Supp. at 718. As already noted, eighteen of the twenty-five Defendants reside in Florida, and a further five reside in Alabama.

Palaxar correctly notes that in assessing this factor, courts draw a distinction between party witnesses and non-party witnesses, giving less weigh to inconvenience imposed on party-witnesses. *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007). However, no Party has sufficiently identified non-party witnesses or their potential testimony for the Court to assess the inconvenience they may suffer or the importance of their live testimony to this matter. *See Samsung*, 386 F. Supp. 2d at 718. As already noted, while the Court may infer that relevant witnesses reside in both this district and the transferee forum, no Party has demonstrated that a greater number of highly relevant non-party witnesses reside in either district.

In contrast, several Individual Defendants have proffered affidavits to the Court stating that they will be substantially inconvenienced by continued litigation in this district and that the transferee forum would be the most convenient because they are residents of Florida. (Stollenwerk Aff., ECF No. 45, Attach. 1, ¶¶ 3, 16-19; Williams Aff., ECF No. 48, Attach. 1, ¶¶ 3, 16-19; Jaiman Aff. ECF No. 61, Attach. 1, ¶¶ 3, 14-17.) While party witnesses are generally presumed to be "more willing" to testify in a different forum, *Samsung*, 386 F. Supp. 2d at 718, the Court will not read party convenience out of the transfer analysis. Because the only competent evidence of witness inconvenience before the Court has been proffered by various Individual Defendants, this factor weighs in favor of transfer.

E. INTERESTS OF JUSTICE

In evaluating whether the interest of justice weighs in favor of transfer, the Court looks to "the public interest factors aimed at systemic integrity and fairness." *Heinz Kettler*, 750 F. Supp. 2d at 669-70 (quoting *Byerson v. Equifax Info. Servs.*, LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)). "The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Id.* Similarly, "[f]airness is assessed by considering factors such as docket congestion, the interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.*

In this matter, the interests of justice weigh heavily in favor of transfer on the basis of judicial economy and avoidance of inconsistent judgments. "Where a party has previously litigated a case involving similar issues and facts[,] 'a court in that district will likely be familiar with the facts of the case.' As a matter of judicial economy, such familiarity is highly desirable." *Samsung*, 386 F. Supp. 2d at 722 (quoting *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 938 (E.D. Va. 2005)).

Not only is this case similar to the Florida Lawsuit, it appears to involve facts and arguments identical to those presented by Curry and others in support of the Florida Lawsuit's Second Amended Counterclaims. *See Mirabilis Ventures, Inc. v. Palaxar Grp., LLC*, 2011 U.S. Dist. LEXIS 104629, at *14-15 (summarizing the procedural history of the Florida Lawsuit). The Second Amended Counterclaims included allegations of intentional interference with an advantageous business relationship and civil conspiracy against Defendants Nexia, Bates, and Mokwa, among others. Although Palaxar has increased the list of defendants, it has not demonstrated that the claims it brings to this Court differ from those considered by the Florida court such that the interests of justice do not favor transfer.

Additionally, the record—now including seventeen motions to dismiss or transfer and hundreds of exhibits, largely replicating Florida Lawsuit documents—demonstrates that the

Parties vigorously dispute the correct interpretation of the meaning and effect of the Florida court's rulings. For example, The Maher Law Firm, PA, and Individual Defendants Mokwa, Bates, and Maher assert that the Florida court entered final judgment against Palaxar and dismissed with prejudice "all counterclaims," presumably including the Second Amended Counterclaims described previously. (ECF No. 24, Attach. 5, at 1.) Palaxar argues that this is a mere scrivener's error, as evidenced by the facts that (1) Palaxar did not join the Second Amended Counterclaims and (2) the Florida court noted as much in its August order denying a motion for sanctions and attorneys' fees. See Mirabilis, 2011 U.S. Dist. LEXIS 104629, at *14 n.5. The Parties' memoranda contain other, similar disputes and frequently point to documents generated in the course of the Florida Lawsuit to support their positions. The Florida court is plainly in a better position to know the proper meaning and effect of its prior rulings. Particularly where a prior, related case may have preclusive effect on a current dispute, transfer may serve to minimize the risk of inconsistent judgments. See Weinberger v. Tucker, 391 F. Supp. 2d 241, 245 (D.D.C. 2005).

While Palaxar asserts that this Court has a strong interest in ensuring that local controversies are decided at home, this action appears to be no more local to this forum than to the Middle District of Florida. Certainly, this Court "has an interest in providing a forum for its residents to litigate their disputes." Heinz Kettler, 750 F. Supp. 2d at 670. However, the Florida court has a strong interest in ensuring that its rulings are properly interpreted, and a substantial portion of the events underlying this action occurred in the transferee forum. As such, the interests of justice appear to heavily favor transfer to the Middle District of Florida.

### IV. CONCLUSION

On balance, while Palaxar's initial choice of forum is entitled to some deference, the relevant public and private interest factors overcome this deference and clearly point to the Middle District of Florida as the appropriate forum for this litigation.

For the foregoing reasons, the Court will TRANSFER this action to the Middle District of

Florida.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

/s/
James R. Spencer
Senior U. S. District Judge

ENTERED this 13th day of May 2014.

14